IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PROPHETKELLY L. CLARK, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )    Case No. 21-CV-457-TCK-JFJ |
| | ) |
| SHELTER MUTUAL INSURANCE COMPANY, | ) |
| | ) |
|    Defendant. | ) |

## OPINION AND ORDER

Before the Court is Defendant Shelter Mutual Insurance Company's (Defendant) Motion for Summary Judgment filed pursuant to Fed. R. Civ. P. 56(a). (Doc. 15). The plaintiff, Prophetkelly Clark (Plaintiff) filed a Response in opposition (Doc. 20), and Defendant filed a Reply. (Doc. 23).

Plaintiff is the proprietor of a barbershop in Tulsa, Oklahoma, and his business was insured under Business Insurance Policy issued by Defendant, Policy Number 35-78-10427627-1 (Policy). Plaintiff alleges that he incurred two separate property losses while insured by Defendant, and that after duly filing claims for losses under the Policy, Defendant failed to tender any payment owed to him. Consequently, Plaintiff filed suit, asserting breach of contract and bad faith claims against Defendant. Defendant now moves for summary judgment, arguing that the case should be dismissed in its entirety because Plaintiff's reported losses are not covered by the Policy. For the reasons discussed below, Defendant's Motion for Summary Judgment is **GRANTED**.

I. **FACTUAL AND PROCEDURAL BACKGROUND**[1]

Plaintiff's barbershop is located at 5822 South Peoria Avenue in Tulsa, Oklahoma, and inside of Plaintiff's barbershop salon is a studio in which Plaintiff would produce music. (Clark Dep. 113:14-115:2, ECF No. 15-7). In the early afternoon of September 27, 2019 (First Loss), Plaintiff had parked his vehicle in front of his barbershop and went into the studio to work on music production. (*Id.* at 112:11-114:21). On that particular day, Plaintiff testified that he had been working in his studio for roughly three to five hours and had headphones on, playing music at a volume to the point where he could not "hear anything." (*Id.* at 113:20-114:4). Plaintiff's testimony also revealed that he is unable to see his car when he is in his recording studio. (*Id.* at 113:14-18). When Plaintiff exited his studio later that evening, he discovered that the window of his car had been broken, and that numerous items from his vehicle had been stolen. (*Id.* at 82:12-84:24; 112:3-7; 114:18-21). Specifically, Plaintiff states that $1,200 in cash was stolen from this glove compartment, (Docs. 2-3 at ¶ 8; 20 at 3), and that two barber cases, containing numerous items of barber tools, were stolen from the back seat of his vehicle, (Clark Dep. 82:12-84:24, ECF No. 15-7; Doc. 2-3 at ¶ 8). According to Plaintiff's Proof of Loss form, the First Loss resulted in property loss totaling more than $14,409.[2] (Doc. 20-1).

---

1. The Court notes that Plaintiff does not dispute any material facts stated in Defendant's Motion for Summary Judgment. (Doc. 20 at 1-2). Plaintiff does offer one additional exhibit in his Response in Opposition to Defendant's Motion for Summary Judgment, which is the Proof of Loss Form that Plaintiff ostensibly provided to Defendant, dated February 24, 2020. (Doc. 20-1). Thus, the following facts are undisputed, as set forth in Defendant's Motion for Summary Judgment, Plaintiff's pleadings, and the parties' documentary evidence.

2. While this total is based on the Proof of Loss form that Plaintiff completed, (Doc. 20-1), the Court notes that Plaintiff's handwriting is almost entirely illegible. Thus, although the Court is not able to decipher the itemized basis for the $14,409 total, for purposes of summary judgment, the Court assumes that this amount represents the value of various barber tools that were stolen from Plaintiff's vehicle.

On October 24, 2019 (Second Loss), Plaintiff was outside of his business when he was robbed at knifepoint of $1,800 in cash, his car key, and his cell phone. (Doc. 2-3 at ¶ 8). Plaintiff testified that, a few days after the robbery, his car key was returned to him by the assailant, (Clark Dep. 135:15-25). Plaintiff also stated that his cell phone was purchased for $100 (Clark Dep. at 138:5-9).

At the time of both losses, Plaintiff was insured by Defendant under a Business Insurance Policy, in which Plaintiff received coverage for business personal property, subject to a $25,000 limit and a $1,000 per-occurrence deductible. (Doc. 15-1). Plaintiff's Policy was modified in relevant part by the Standard Coverage Form, which replaced the "Perils We Insure Against" section of the Policy with a narrower list of covered perils. (Doc. 15-3 at 1). Of relevance, the Standard Coverage Form expressly excludes loss "by pilferage, theft, burglary or larceny except for willful damage to the covered buildings"[3] as a covered peril. (*Id.*) Rather, coverage for burglary, robbery, and theft are covered under two additional endorsements: 1) Burglary and Robbery Additional Coverage, Form B-286.3-B (Robbery Endorsement), (Doc. 15-4); and 2) Theft, Burglary and Robbery Coverage, Form B-584-B (Theft Endorsement), (Doc. 15-5). Both the Robbery Endorsement and Theft Endorsement define 'burglary' as the taking of "insured property from within the premises by a person making felonious entry or exit of the premises by actual force and violence, evidenced by visible marks . . . to the exterior of the premises." (Docs. 15-4, 15-5). The two endorsements also contain substantially similar definitions of 'robbery,' which requires, in relevant part, taking of insured property by violence, fear of violence, or "felonious act committed in the presence" of the custodian of the property. (*Id.*) Simple theft does

---

3. The parties do not dispute that Plaintiff leased his barbershop premises, and therefore, did not have building coverage. (Doc. 15 at 4, n. 1).

not meet the criteria for robbery or burglary, as defined by the endorsements. (Docs. 15 at ¶ 3, 15-4).

Where the two endorsements differ, however, is that the Robbery Endorsement covers the loss of business personal property—"excluding money and securities"—caused only by burglary or robbery on the premises of the business. (Doc. 15-4). By contrast, the Theft Endorsement does provide coverage for simple theft, and coverage extends to "insured property while at the described locations in or on the covered buildings, or in the open (including within vehicles) on the insured premises or within 100 feet for the insured premises." (*Id.*) While both the Robbery and Theft Endorsements exclude loss of money or securities from coverage under the endorsements, (Docs. 15-4, 15-5), the Theft Endorsement contains, in relevant part, an additional exclusion for theft from an unattended vehicle, (Doc. 15-5). Specifically, in the case of an unattended vehicle, theft of property will not be covered under the Theft Endorsement "unless the covered property is contained within a fully enclosed, locked compartment and the **theft** results from forcible entry evidenced by visible marks to the compartment." (*Id.*)

At some point after the Second Loss, Plaintiff filed claims with Defendant for the property loss incurred from both incidents.[4] (Docs. 2-3 at ¶ 9; 8 at 1-2). In particular, Plaintiff alleges that he incurred a loss of cash and barber tools from the September 27, 2019 theft, and that he incurred a loss of cash, a car key, and a cell phone from the October 24, 2019 robbery. (Docs. 2-3 at ¶ 8; 8 at 1-2). Plaintiff asserts that "due demand [was] made upon . . . Defendant but . . . Defendant has failed to refund or pay Plaintiff the said sum demanded." (Doc. 2-3 at ¶ 10). The last record of

---

4. Defendant states that it was notified of both losses on December 3, 2019. (Doc. 6 at ¶ 9). However, at no place in the record before the Court does Plaintiff state the exact date on which he notified Defendant of the losses—stating only that "[a]fter both incidents, Plaintiff contacted Defendant to file a claim for his property loss." (Doc. 2-3 at ¶ 9).

communication between Plaintiff and Defendant before the commencement of litigation is Plaintiff's Proof of Loss form, which is dated February 24, 2020, wherein Plaintiff appears to itemize the stolen property from the First Loss. (Doc. 20-1).

On September 1, 2021, Plaintiff filed a Petition in state court, asserting breach of contract and bad faith claims against Defendant, (Doc. 2-2 at 2-4), which was amended on September 24, 2021, but did not add any additional claims for relief or substantive factual allegations (Doc. 2-3). Defendant subsequently removed the case to this Court, pursuant to 28 U.S.C. §§ 1332, 1441(b), and 1446, alleging complete diversity of the parties and an amount in controversy in excess of $75,000. (Doc. 2 at 1-2). Defendant now moves for summary judgment on all three of Plaintiff's claims for relief. (Doc. 15).

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id.* However, the party opposing a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party opposing a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986).

A movant who "will not bear the burden of persuasion at trial need not negate the nonmovant's claim, "but may "simply . . . point[] out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (internal citations omitted). If the movant makes this prima facie showing, "the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* In response to a motion for summary judgment, the nonmoving party "may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) (internal citations omitted). "The mere possibility that a factual dispute may exist, without more, is not sufficient to overcome convincing presentation by the moving party." *Id.*

### III. ANALYSIS

#### A. Breach of Contract

In its Motion for Summary Judgment, Defendant argues that Plaintiff was not entitled to coverage for the cash stolen in the First or Second Loss because "money" is excluded from coverage under both endorsements. (Doc. 15 at 7). Further, Defendant contends that the stolen barber tools from the First Loss are excluded from coverage because Plaintiff's vehicle at the time of the theft was unattended, and therefore, the loss falls within the fourth exclusion of the Theft Endorsement. (*Id.* at 8-9). Lastly, Defendant asserts that the cell phone and car key in the Second Loss are not compensable because the car key was returned after the robbery and the cell phone value was less than the $1,000 deductible. (*Id.* at 9-10). Thus, Defendant concludes, there was no obligation to pay Plaintiff for his losses because the only property not excluded from coverage was a $100 cell phone, which falls well below the $1,000 deductible. (*Id.*)

"The interpretation of an insurance contract is governed by state law and, sitting in diversity, we look to the law of the forum state." *Houston Gen. Ins. Co. v. Am. Fence Co., Inc.*, 115 F.3d 805, 806 (10th Cir. 1997) (applying Oklahoma insurance law). Under Oklahoma law, the insured has the burden of showing that his claim is covered under the policy, and once the insured establishes coverage, the burden shifts to the insurer to show that the loss falls within an exclusionary clause of the policy. *Pitman v. Blue Cross and Blue Shield of Okla.*, 217 F.3d 1291, 1298 (10th Cir. 2000). Thus, for Defendant to prevail in his Motion for Summary Judgment, the undisputed facts must establish that, under Oklahoma law, Plaintiff's claims were not covered by the Policy. *See State Farm Fire & Cas. Co. v. Pettigrew*, 180 F. Supp. 3d 925, 931 (N.D. Okla. 2016) ("summary judgment in favor of the insurer is proper when the undisputed facts show that the insured has failed to establish a covered claim under its insurance policy"). The Court addresses each of Defendant's arguments in turn.

1. **First Loss**

    a. **Cash**

Plaintiff does not dispute that coverage for loss of money and securities are excluded from the Theft and Robbery Endorsements. (Docs. 15 at 4-5; 20 at 1-2). Further, Plaintiff makes no attempt to argue that the $1,200 in cash allegedly stolen in the First Loss is not "money" for the purposes of the Theft Endorsement exclusion. (Doc. 20). Rather, Plaintiff appears to argue that the stolen cash falls within an exception to the fourth exclusion of the Theft Endorsement[5] because

---

5. The Court notes that, in making his argument regarding an exception to the unattended vehicle exclusion, Plaintiff references paragraph 23 of the "EXCLUSIONS – SECTION I" on page 7 of the Policy. (Doc. 20 at 3). However, that section was deleted and replaced by the Standard Coverage Form B-570.1-B, (Doc. 15-3 at 1), which Plaintiff does not dispute (*see* Docs. 15 at ¶ 2; 20 at ¶ 2). While Plaintiff offers no explanation for his reference to a deleted section of the policy, the Court construes Plaintiff as intending to refer to the fourth exclusion of the Theft Endorsement,

the cash was stored in a locked compartment of an unattended vehicle. (*Id.* at 3). Specifically, the fourth exclusion of the Theft Endorsement provides that theft of insured property from an unattended vehicle is not covered unless it is enclosed in a locked compartment in the vehicle and evidenced by visible marks to the compartment." (Doc. 15-5). Because the vehicle "had $1,200 in the glove department [sic], [it] is a locked compartment entitling him to recovery under the policy." (Doc. 20 at 3). From this, Plaintiff asserts that coverage for the stolen cash presents a triable question of fact for the jury to resolve. (Doc. 20 at 3). The Court is not persuaded.

"The interpretation of an insurance contract and whether it is ambiguous is determined by the court as a matter of law." *Max True Plastering Co. v. U.S. Fid. & Guar. Co.*, 912 P.2d 861, 869 (Okla. 1996). When interpreting an insurance contract, "policy exclusions are read seriatim; each exclusion eliminates coverage and operates independently against the general declaration of insurance coverage and all prior exclusions by specifying other occurrences not covered by the policy." *Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 377 (Okla. 1991). Here, even if Plaintiff was successful in proving that the stolen cash was an exception to the unattended vehicle exclusion of the Theft Endorsement, it does not negate the fact that the Theft Endorsement also excludes "[l]oss of money and securities" from coverage. (Doc. 15-5). And while "money" is not a defined term in the Policy, "[t]he language of an insurance policy must be accepted in its plain, ordinary, and popular sense." *McDonald v. Schreiner*, 28 P.3d 574, 577 (Okla. 2001). Because it is undisputed that loss of money is excluded under the Theft Endorsement, and because the term "money," as used in the Policy, unambiguously means cash, the cash stolen from Plaintiff's glove compartment

---

(Doc. 15-5), which contains language identical to the deleted paragraph referenced in Plaintiff's brief.

in the First Loss is unequivocally excluded from coverage. Accordingly, Plaintiff has failed to present a triable issue with respect to the theft of cash from his vehicle.

### b. Barber Tools

Plaintiff concedes that his vehicle was "unattended" for purposes of the fourth exclusion of the Theft Endorsement. (Docs. 15 at 8-9; 20 at 3-4; 23 at 3). Instead, Plaintiff argues that the theft of barber tools from the back seat of his vehicle in the First Loss also falls within the exception to the unattended vehicle exclusion of the Theft Endorsement. (Doc. 20 at 4). Specifically, Plaintiff asserts that the "tools were in locked cases and should be determined to be a locked compartment entitling the Plaintiff to recover under the policy." (*Id.*) The only evidence Plaintiff offers to prove that such exception applies is a Proof of Loss form, in which Plaintiff details losses in excess of $14,000. (Doc. 20-1). This Proof of Loss form, Plaintiff argues, demonstrates that the $1,000 deductible was met, and thus, the existence of coverage "is a question of fact and should be determined by the trier of fact." (Doc. 20 at 4). The Court, again, disagrees.

Plaintiff's argument that meaning of the term "compartment" is a triable fact issue suffers from the same infirmity as his argument regarding the stolen cash, namely, that the interpretation of an insurance contract is a matter of law for the Court to decide. *Max True*, 912 P.2d at 869. Here, while "compartment" is not defined by the Policy, the Court finds that there is no ambiguity as to its meaning in the Theft Endorsement. In particular, the word "compartment" is defined as "a separate division or section" or "one of the parts into which an enclosed space is divided." *Compartment*, Merriam-Webster, https://www.merriam-webster.com/dictionary/compartment (last visited July 1, 2022). In requiring "visible marks *to the compartment*," (Doc. 15-5) (emphasis added), the Theft Endorsement clearly contemplates that insured property be stored in a separate, enclosed division of the unattended vehicle—rather than a separate case inside, but not a part, of

9

the unattended vehicle. As Defendant points out, Plaintiff's conflation of words "case" and "compartment" is tantamount to saying that a passenger's suitcase is a compartment of an airplane. (Doc. 23 at 8-9). Thus, to adopt Plaintiff's use of the word "compartment" in the Theft Endorsement would lead to a "forced or strained construction" in service of interposing an ambiguity where one does not exist. *Wynn v. Avemco Ins. Co.*, 963 P.2d 572, 575 (Okla. 1998).

Moreover, the Court notes that even Plaintiff made a distinction between "case" and "compartment"—using the term "case" to describe the storage of his barber tools, while using the word "compartment" to describe separate enclosures within the barber case. (*See* Clark Dep. 91:13-17, ECF No. 23-1) (describing the stolen barber case as being "[l]ike a metal suitcase but . . . when you open it up . . . it has little compartments in it for your shears and clippers"). The mere fact that Plaintiff now attempts to conflate the meaning of "case" and "compartment" is not sufficient to demonstrate an ambiguity within the terms of an insurance contract. *BP Am., Inc. v. State Auto Prop. & Cas. Ins. Co.*, 148 P.3d 832, 836 (Okla. 1995), *as corrected* (Oct. 30, 2006).

It is undisputed that Plaintiff's barber tools were stored in a case in his car, and Plaintiff makes no attempt to rebut Defendant's argument—and apparently concedes—that the car was unattended at the time of the theft. Further, the Court finds that there is no demonstrable ambiguity with the term "compartment" as used in the Theft Endorsement and, thus, the barber cases were not a compartment of Plaintiff's vehicle. Accordingly, Defendant has carried its burden in proving that all of Plaintiff's stolen property from the First Loss fell within an exclusionary clause of the policy. *Pitman*, 217 F.3d 1291, 1298 ("insurer has the burden of showing that a loss falls within an exclusionary clause of the policy"). To that end, Defendant is entitled to summary judgment with respect to the First Loss because Plaintiff has not established that the losses he sustained were covered under the Policy.

### 2. Second Loss

Plaintiff does not dispute any material fact, nor does Plaintiff produce any evidence related to the Second Loss to refute Defendant's assertions. (Doc. 20). Plaintiff merely asserts that he "disputes that he is not able to recover for either of the losses because of the applicable business policy exceptions." (*Id.* at 3). However, Plaintiff's arguments do not address any specific issue raised by Defendant with respect to the Second Loss—namely, the only non-excluded and non-returned property is a $100 cell phone, which falls below the policy deductible. (Docs. 15 at 6-9; 20). As addressed above, Defendant has successfully established—and Plaintiff apparently concedes—that cash is excluded from both the Robbery and the Theft Endorsements. Consequently, there is no genuine issue of material fact with respect to the property in the Second Loss. Plaintiff has failed to establish that his compensable property losses exceeded the $1,000 deductible for the October 24, 2019, robbery, and thus, Defendant is entitled to summary judgment on those claims.

### 3. Lost Income

For the first time in his Response, Plaintiff alleges that he sustained a loss of income due to the interruption to his business operations caused by the theft of his property. (Doc. 20 at 3). The following is Plaintiff's entire argument regarding his lost income claim:

- A. Plaintiff would turn this Court's attention to page 4 of the policy that states the following:

COVERAGE C-LOSS OF INCOME

1. We cover your actual loss sustained resulting directly from interruption of your business operation because of damage to real or personal property. Plaintiff's property was not only damaged but stolen. He suffered loss of income that is covered by the Policy. Whether coverage exists for his loss [sic] income is a disputed fact and should be determined by the trier of fact.

(Doc. 15-2 at 3). Defendant's Reply identifies a number of defects with Plaintiff's argument, notably, that loss of income was omitted from Plaintiff's pleadings[6] and the parties' stipulated facts.[7] Moreover, Defendant contends that Plaintiff not only fails to provide any evidence of lost income but the threadbare assertion of lost income in his Response contradicts his deposition testimony. (Doc. 23 at 4-5). The Court agrees with Defendant that Plaintiff's loss of income claim presents a mare's nest of issues, rather than a genuine issue of material fact.

As a preliminary matter, the Petition alleges that Plaintiff contacted Defendant to file a claim only "for his *property* loss." (Doc. 2-3 at ¶ 9) (emphasis added). "Normally a claim or theory that is not adequately raised in the complaint will not be considered." *Fuqua v. Lindsey Mgmt. Co.*, 321 F. App'x 732, 734 (10th Cir. 2009). The Court has discretion to refuse amendment of a deficient complaint where a party has introduced new facts and legal theories in response to a motion for summary judgment and has neither sought leave to amend the complaint nor requested that his response be treated as a request for the same. *Id.* Plaintiff's Response does not include an affidavit regarding his lost income or any other evidence of non-property losses. Thus, the Court declines to consider Plaintiff's loss of income claim, especially given that Plaintiff has also stipulated to his claimed losses, which did not include loss of income. (Doc. 8 at 1-2).

Even if the Court were to consider Plaintiff's loss of income claim, his conclusory, two-sentence argument would fail on the merits. While Plaintiff does not so much as identify which

---

6. The Amended Petition alleges that Plaintiff "contacted Defendant to file a claim for his property loss," and the Petition makes no reference to a loss of income as a result of his property loss. (Doc. 2-3 at ¶ 9).

7. According to the stipulated facts in the parties' Joint Status Report, "Plaintiff's first loss was for cash and barbershop equipment taken from his vehicle," and "Plaintiff's second loss was for cash, a car key, and a cell phone taken during an assault and robbery." (Doc. 8 at 1-2). These loses were presented to Defendant. (*Id.*) Again, no reference to loss of income is made in the Joint Status Report.

event caused an interruption in his business operation, his testimony establishes that he did not need the stolen barber supplies to continue work, (Clark Dep. 103:4-13, 165:22-167:3, ECF No. 23-2), and that within a few days of the Second Loss, he replaced his cell phone and his car key was returned, (*id.* at 167:4-168:2). This assumes that Plaintiff could successfully establish that the lost income resulted from a covered peril, which is not clear to the Court based on the two-sentence argument made in Plaintiff's Response. Thus, even assuming that Plaintiff could establish that his lost income resulted from a covered peril and there was evidence of his lost income, no reasonable factfinder would conclude from Plaintiff's testimony that he lost income due to his property losses. Accordingly, Defendant is entitled to summary judgment on this claim.

**B. Breach of Contractual and Fiduciary Duty of Good Faith and Fair Dealing**

Plaintiff's second and third causes of action against Defendant are for breach of the duty of good faith, which is premised on Defendant's alleged failure to investigate and pay Plaintiff's claims. (Doc. 2-3 at ¶¶ 17-19, 23). Defendant argues that a contractual bad faith action cannot lie where a Plaintiff is not entitled to recover under an insurance policy or where there is a legitimate dispute regarding coverage. (Doc. 15 at 10-13). Plaintiff makes no argument in response to Defendant's Motion for Summary Judgment on the issue of breach of duties of good faith. (Docs. 20, 23 at 1).

At the outset, the Court notes that under Oklahoma law, "liability under the contract is a prerequisite to a recovery for bad faith breach of an insurance contract." *Davis v. GHS Health Maint. Org., Inc.*, 22 P.3d 1204, 1210 (Okla. 2001); *Taylor v. State Farm Fire & Cas. Co.*, 981 P.2d 1253, 1258 (Okla. 1999). Because Plaintiff has failed to establish a breach of contract against Defendant, the Court "must also conclude that [Plaintiff] failed to establish a *prima facie* case of bad faith breach of contract." *Expertise, Inc. v. Aetna Fin. Co.*, 810 F.2d 968, 972 (10th Cir. 1987).

13

In addition, the Court notes that Oklahoma does not recognize an inherent fiduciary relationship between an insured and an insurer. *See Silver v. Slusher*, 770 P .2d 878, 883–84 (Okla.1988) ("relationship between the insured and insurer clearly is contractual in nature"); *Cosper v. Farmers Ins. Co.*, 309 P.3d 147, 150 (Okla. Ct. Civ. App. 2013) ("insureds' relationship with their insurer was at arms' length and they did not stand in any recognized form of special relationship") (internal citations omitted). Here, regardless of the nature of relationship between Plaintiff and Defendant, Plaintiff does not present any basis from the undisputed material facts to establish that Defendant's conduct could reasonably be viewed as tortious. To the contrary, the undisputed material facts demonstrate that Defendant's withholding of payment was well-supported by specific terms and exclusionary provisions of the Policy. Thus, Defendant is entitled to summary judgment on Plaintiff's breach of duty of good faith and fair dealing claims. *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1437 (10th Cir. 1993) (when undisputed facts do not establish "what might reasonably be perceived as tortious conduct on the part of the insurer, the legal gate to submission of the issue to the jury remains closed").

### IV.   CONCLUSION

In accordance with the foregoing, Defendant's Motion for Summary Judgement (Doc. 15) is **GRANTED**, and a final judgment terminating the case shall be entered.

**IT IS SO ORDERED this 13th day of July, 2022.**

TERENCE C. KERN
United States District Judge